**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TRACY ZDZIARSKI,** | : | |
| **Plaintiff** | : | |
| | : | **No. 3:12-cv-01887** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **CAROLYN W. COLVIN** | : | |
| **COMMISSIONER** | : | |
| **OF SOCIAL SECURITY** | : | |
| **Defendant** | : | |

**MEMORANDUM**

Before the Court is Plaintiff Tracy Zdziarski's complaint, wherein she requests review of the Social Security Commissioner's decision denying her disability insurance benefits and supplemental security income payments.  (Doc. No. 1.)  The motion has been briefed, and on June 25, 2014, the Court heard oral argument on Plaintiff's complaint.  (Doc. No. 20.)  For the reasons that follow, the Court will affirm the Commissioner's decision.

**I.     BACKGROUND**

On June 7, 2009, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income. (Doc. No. 1 ¶ 5.)  Both applications were denied, and Plaintiff subsequently requested a hearing on the matter.  (Id. ¶ 6.)  On January 4, 2011, Plaintiff's hearing convened before Administrative Law Judge ("ALJ") Wanda L. Wright.  (Id.)  On January 20, 2011, the ALJ issued a decision denying Plaintiff's claim.  (Id. ¶ 7.)  On March 23, 2011, Plaintiff filed a timely appeal to the Appeals Council, and on July 24, 2012, the Appeals Council issued an order denying Plaintiff's request for review of the ALJ's decision.  (Id. ¶¶ 7-8.)  The Appeals Council decision of July 24, 2012, is thus the final decision of the Commissioner and the Social Security Administration.  (Id.

1

¶ 10.)

On September 20, 2012, Plaintiff filed a complaint in this Court appealing the Commissioner's decision.  (Doc. No. 1.)  Plaintiff argues that the ALJ erred in rejecting the opinion of Plaintiff's treating physician, and by finding that Plaintiff's noncompliance with medical treatment precluded an award of disability benefits, because Plaintiff's indigence should have excused her noncompliance.  (Doc. No. 11 at 8.)

## II.     STANDARD OF REVIEW

A trial court has plenary review of all legal issues decided by the Commissioner.  Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007).  The trial court's review of any findings of fact, however, is limited to whether those findings are supported by "substantial evidence." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  The substantial evidence standard is highly deferential, and is satisfied with "more than a mere scintilla" of evidence.  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (internal citation omitted).  "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).  Substantial evidence "does not mean a large or considerable amount of evidence," but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quotation omitted).  Substantial evidence exists only "in relationship to all the other evidence in the record," see Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981), and therefore a court reviewing the Commissioner's decision must scrutinize the record as a whole, including whether the Commissioner adequately developed the record.  Shaw v. Chater, 21 F.3d 126, 131 (2d Cir. 2000).

To receive disability benefits, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medical determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process when evaluating disability insurance claims. 20 C.F.R. § 404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant, first, is engaging in substantial gainful activity; second, has an impairment that is severe or a combination of impairments that is severe; third, has an impairment or combination of impairments that meets or equals the requirements of a listed impairment; fourth, has the residual functional capacity to return to his or her past work; and, if not, fifth, whether he or she can perform other work in the national or regional economy. Id. For the purposes of this determination, residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34475 (July 2, 1996). The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. § 404.1545; see

Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (noting that residual functional capacity is "defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

## III.   DISCUSSION

At the first step of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 14, 2008, the alleged onset date. (Doc. No. 8-2 at 15.)  At step two, the ALJ found that Plaintiff has the severe impairments of narcolepsy and cataplexy.  (Id. (citing 20 CFR 404.1520(c) and 416.920(c).)  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404.  (Id. at 17.)  At step four, the ALJ concluded that Plaintiff had the residual functional capacity to perform medium work with the following limitations: Plaintiff can stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; lift and carry twenty-five pounds frequently and fifty pounds occasionally; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance; should avoid concentrated exposure to cold, heat, humidity, noise, and vibration; and should avoid all exposure to moving machinery, hazardous machinery, and unprotected heights.  (Id. at 18.)  Finally, at step five, the ALJ determined that Plaintiff is capable of performing past relevant work.  (Id. at 20-21.)

Plaintiff argues that the ALJ erred in rejecting the opinion of Plaintiff's treating physician and by determining that Plaintiff's noncompliance with medical treatment precluded an award of disability benefits, because Plaintiff's indigence should have excused her noncompliance.  (Doc. No. 11 at 8.)  The Court will discuss each objection in turn.

A.      **Opinion of Plaintiff's treating physician**

Plaintiff asserts that the ALJ incorrectly rejected the opinion of her treating physician, Dr. David Fisk, and improperly engaged in medical analysis of Plaintiff's condition.  (Id. at 10.) The ALJ accorded limited weight to Dr. Fisk's opinion that Plaintiff cannot "perform reliable and safe work," because the ALJ found that Dr. Fisk's opinion "appears to be based in part on [Plaintiff's] compliance issues."  (Id. at 20.)  Plaintiff asserts that "her indigency should have excused her noncompliance," "[t]here was a lack of substantial evidence to support the ALJ's finding that better compliance with prescribed medical treatment would have improved the Plaintiff's condition to the point where she could work," and "[t]here was a lack of substantial evidence to support the ALJ's rejection of the opinions of the Plaintiff's treating physician."[1] (Doc. No. 1 ¶ 11(A)-(C).)

Generally, a treating physician's opinion is given more weight than that of non-treating sources.  20 CFR § 404.1527(c).  Where an ALJ does not accord a treating physician's opinion controlling weight, she will "apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of [Section 404.1527], as well as the factors in paragraphs (c)(3) through (c)(6) of Section 404.1527] in determining the weight to give the opinion."  Id.  Section 404.1527 (c)(2)(i)-(ii) instructs the ALJ to examine the "length of the treatment relationship and the frequency of examination," as well as the "nature and extent of the treatment relationship."  Id.

---

[1] The Court notes that the ALJ did not "reject" Dr. Fisk's opinion that Plaintiff is disabled within the meaning of the Social Security Act, as Plaintiff asserts, but rather accorded it "limited weight."  (See Doc. No. 8-2 at 20.)  The Court further notes that the ALJ did not reject Dr. Fisk's diagnosis that Plaintiff suffers from cataplexy and narcolepsy, as Plaintiff asserts, but again, accorded only limited weight to Dr. Fisk's conclusion that Plaintiff cannot perform safe and reliable work.  (See id.)

Section 404.1527(c)(3)-(6) instructs the ALJ to examine the supportability, consistency, specialization, and "other factors" that tend to support or contradict the opinion.  Id.

In according Dr. Fisk's opinion limited rather than "great" weight, the ALJ examined the nature and extent of Dr. Fisk's treatment by discussing the frequency of Plaintiff's treatment, including her failure to appear for appointments.  (Doc. No. 8-2 at 20.)  The ALJ also considered Dr. Fisk's treatment notes, which indicated that when controlled by medication, Plaintiff's condition was fairly stable, episodes of narcolepsy and cataplexy were relatively infrequent, and Plaintiff was able to operate a motor vehicle.  (Id.; see also Doc. No. 8-10 at 74.)  The ALJ concluded that Dr. Fisk's ultimate recommendation – that Plaintiff be found disabled and unable to "perform reliable and safe work" even when she complied with treatment – did not comport with Dr. Fisk's treatment notes.  (Id.)  Thus, the ALJ determined that Dr. Fisk's opinion that Plaintiff cannot perform reliable and safe work was accurate only when Plaintiff's conditions were not controlled, which only occurred when Plaintiff did not comply with medical treatment. (Id.)  The ALJ then concluded that because the longitudinal record indicated that Plaintiff was able to perform safe, reliable work when her conditions are controlled, she accorded limited weight to Dr. Fisk's opinion to the contrary.  (Id.)

Where a treating physician's opinion is inconsistent with the record as a whole, the ALJ may accord less weight to the opinion of that physician, so long as the ALJ's conclusion is supported by substantial evidence.  See Plummer, 186 F.3d at 429.  The Court finds that the ALJ's decision to accord limited weight to Dr. Fisk's opinion was supported by substantial evidence.  The ALJ performed a review of the record as a whole and detailed the reasons why she accorded limited weight to Dr. Fisk's opinion that Plaintiff was disabled regardless of her

compliance with treatment.  (Doc. No. 8-2 at 19-20.)  Most importantly, she relied upon Dr.

Fisk's treatment notes, which expressly indicate that Plaintiff functions well when properly

medicated.  (See Doc. No. 8-10 at 74) ("When medications were restarted, [Plaintiff] regained

control of her sleep and daytime function and is safely caring for her 8 year old and driving.")

Accordingly, the Court finds that there was substantial evidence for the ALJ's decision to accord

limited weight to Dr. Fisk's opinion that Plaintiff cannot engage in safe and reliable work, and

further finds that there was substantial evidence for the ALJ's determination that Plaintiff is

employable and capable of work when she complies with treatment.

### B.      Plaintiff's compliance with prescribed treatment

Plaintiff next argues that the ALJ erred in basing her decision concerning Plaintiff's

ineligibility for benefits on Plaintiff's noncompliance with prescribed treatment, because

Plaintiff's noncompliance excusably resulted from her indigency.  (Doc. No. 11 at 11.)  Social

Security Ruling 96-7P provides that:

> The adjudicator must not draw any inferences about an individual's symptoms
> and their functional effects from a failure to seek or pursue regular medical
> treatment without first considering any explanations that the individual may
> provide, or other information in the case record, that may explain infrequent or
> irregular medical visits or failure to seek medical treatment.

See Social Security Ruling 96-7P.  See also Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 547

(3d Cir. 2003).  Plaintiff argues that the ALJ improperly "fault[ed] the Plaintiff for non-

compliance," and failed "to comply with the mandates of the above-cited Social Security Rulings

and the Third Circuit decisions."  (Doc. No. 11 at 12.)  Plaintiff asserts that "[t]here is no

evidence suggesting some other reason for Plaintiff's non-compliance, beyond her loss of

insurance."  (Id.)

At her hearing, Plaintiff testified that she was only without insurance to cover her prescribed medications for a limited period in 2008.  (Doc. No. 8-2 at 47.)  However, according to Dr. Fisk, Plaintiff did not appear for treatment between April 2010 and October 2010.  (See id. at 49-40; Doc. No. 8-11 at 32-33.)  Plaintiff testified at the hearing that she did not appear for six months because her treating nurse practitioner encouraged her to cancel appointments when she felt tired or did not have a ride.  (Doc. No. 8-2 at 50.)  She explained that during this six month period she "didn't feel like getting off the couch to get up and go" to her appointments.  (Id.)  She further testified that during this six month time period she did not need refills on any prescribed medications.  (Id.)  The ALJ found Plaintiff's rationale for not appearing at her appointments "not entirely credible."  (Id. at 20.)

The Court finds that the ALJ had substantial evidence to support her finding that Plaintiff was responsible for her noncompliance, and rejects Plaintiff's argument to the contrary.  (See Doc. No. 8-2 at 19-20.)  First, the ALJ did not fail to "consider[] any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment," but rather expressly considered Plaintiff's arguments that her noncompliance was due in part to lack of insurance, and in part to the encouragement of her treating nurse practitioner.  Social Security Ruling 96-7P.  (See also Doc. No. 8-2 at 19-20.)  The ALJ rejected Plaintiff's argument regarding insurance, because Plaintiff testified that she had insurance during the six month interval in 2010 in which she failed to appear for any appointments.  (See Doc. No. 8-2 at 47.)  The ALJ further found that Plaintiff's testimony may not be credible where it was inconsistent with the longitudinal record, particularly with regard to the severity and frequency of her attacks, her reasons for not seeking treatment for

six months in 2010, and considering the record's indication that Plaintiff operates a motor vehicle more frequently than she admits.  (See id. at 19.)  Thus, the Court finds that the ALJ properly considered and rejected Plaintiff's proffered reasons for her noncompliance. Accordingly, the Court finds that substantial evidence supports the ALJ's determination that the Plaintiff was responsible for her noncompliance.

## IV.     CONCLUSION

For the foregoing reasons, the Court finds that there is substantial evidence to affirm the decision of the Commissioner of the Social Security Administration upholding the decision of the ALJ denying disability insurance benefits and supplemental security income payments to Plaintiff.  The Court will affirm the decision of the Commissioner.  An order consistent with this memorandum follows.